UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA HILSON
and NICOLE HILSON,

    Plaintiffs,                   CASE NO.   8:11-cv-00013-MSS-MAP

vs.

GEICO GENERAL INSURANCE
COMPANY,

    Defendant.

_____/

## PLAINTIFFS' NOTICE OF COMPLIANCE WITH EXPERT WITNESS DISCLOSURES

    Plaintiffs, Patricia Hilson and Nicole Hilson, pursuant to the Court's Order (Dkt. 27), disclose expert opinions and other matters required by Federal Rule of Civil Procedure 26(a)(2).

1.    **Plaintiffs' Rule 26(a)(2)(B) Disclosure**

A.    **GREG GAEBE**

i.    **Statement of Opinion:**

    Greg Gaebe has been a licensed Florida attorney since 1971 and is a seasoned, AV-rated defense lawyer who works with insurance companies during the claim process. Mr. Gaebe will offer an opinion that the comprehensive pre-suit settlement demand package sent by Ms. Johnson to GEICO is the kind of settlement offer customarily made by people who are making a bodily injury insurance claim. He will also give an opinion on why such an offer as the one made by Ms. Johnson is appropriate. He will identify GEICO's conduct that conformed to the responsibilities it owed to the Hilsons under their insurance policy, the law and industry standards. He will also identify GEICO's conduct that violated the responsibilities a carrier owes to its insureds when handling a claim such as this one. Mr. Gaebe will specifically identify where upper level management of GEICO failed to ensure that the claim was handled in conformance with GEICO's responsibilities. The opinions of Mr. Gaebe are based on his education, training and experience. Mr. Gaebe's expert report is attached as **Exhibit 1**.

EXHIBIT "A" TO GEICO'S MOTION
TO STRIKE PLAINTIFF'S EXPERT
WITNESS, DR. LENI KRAMER

ii.     **Facts or Data Considered**

Facts and data considered are listed in **Exhibit 1**.

iii.    **Exhibits**

Mr. Gaebe may use any of the documents disclosed by the parties or non-parties in support of or to summarize his testimony at trial.

iv.    **Qualifications:**

Biographical information and profile is contained in **Exhibit 1**.

v.     **Other Cases:**

List of deposition and trial testimony for the preceding five years is contained in **Exhibit 1**.

vi.    **Statement of Compensation:**

Fees are contained in **Exhibit 1**.

**B.     JANE PYTEL**

i.      **Statement of Opinion:**

Ms. Pytel is a former insurance industry employee who has insight into the insurance industry's customs, standards and practices. Ms. Pytel is expected to offer an opinion that, by insurance industry standards, GEICO, through its front line adjustors, unreasonably failed to investigate and evaluate the claim made against the Hilsons. Ms. Pytel is also expected to offer an opinion that GEICO fell short of industry practice in determining the exposure of the Hilsons prior to rejecting comprehensive pre-suit settlement demand package that was within the Hilsons' policy limits. Specifically, GEICO was given a written, fair offer that it could have accepted to settle the claim presented against the Hilsons within their policy limits, but GEICO intentionally rejected the offer without a reasonable basis and failed to timely and adequately communicate the offer and its rejection thereto to the Hilsons. The opinions of Ms. Pytel are based on her education, training and experience. Ms. Pytel's expert report is attached as **Exhibit 2**.

ii.     **Facts or Data Considered**

Facts and data considered are listed in **Exhibit 2**.

iii. **Exhibits**

Ms. Pytel may use any of the documents disclosed by the parties or non-parties in support of or to summarize his testimony at trial.

iv. **Qualifications:**

Biographical information and profile is contained in **Exhibit 2**.

v. **Other Cases:**

List of deposition and trial testimony for the preceding four years is contained in **Exhibit 2**.

vi. **Statement of Compensation:**

Fee schedule is contained in **Exhibit 2**.

## C. DR. LENI KRAMER

**Dr. Kramer is available for deposition at her office the morning of April 20.**

i. **Statement of Opinion:**

Dr. Kramer is one of Patricia Hilson's treating physicians. Dr. Kramer will offer an opinion that stress, like that experienced in litigation, is more likely than not detrimental to Ms. Hilson and can lead to increased flare-ups of her autoimmune diseases. This opinion is offered in support of Patricia Hilson's consequential damage claim. The opinions of Dr. Kramer are based on her education, training and experience. Dr. Kramer's expert report is attached as **Exhibit 3**.

ii. **Facts or Data Considered**

Facts and data considered include:
- Complaint
- Deposition of Patricia Hilson
- Medical records of Patricia Hilson bates-stamped as PH MEDICALS 0001 – 0441.

iii. **Exhibits**

Dr. Kramer may use any of the documents disclosed by the parties or non-parties in support of or to summarize her testimony at trial.

iv.   <u>Qualifications:</u>

Biographical information and profile is attached as **Exhibit 4**.

v.   <u>Other Cases:</u>

None.

vi.   <u>Statement of Compensation:</u>

$500 per hour.

## 2.   <u>Plaintiffs' Rule 26(a)(2)(C) Disclosure</u>

### A.   ROBERT JOYCE

i.    The Hilsons do not currently plan to call Mr. Joyce to testify at trial, but if the need arises, the subject matter of Mr. Joyce's testimony would include his representation of Inez Johnson and the legal services he performed in the claim she made against the Hilsons and the subsequent litigation.

ii.   The facts and opinions of Mr. Joyce would be consistent with those discussed at his January 19, 2012 deposition and contained in the documents exchanged by the parties and non-parties.

### B.   LILLIAN REYES

i.    The Hilsons do not currently plan to call Ms. Reyes to testify at trial, but if the need arises, the subject matter of Ms. Reyes's testimony would include his representation of Inez Johnson and the legal services he performed in the claim she made against the Hilsons.

ii. The facts and opinions of Ms. Reyes would be consistent with those discussed at her January 31, 2012 deposition and contained in the documents exchanged by the parties and non-parties.

## C. COSMO BLOOM

i. The subject of Mr. Bloom's testimony includes explaining the circumstances of his representation of the Hilsons and the legal services he performed in defending against the claim presented against the Hilsons.

ii. The facts and opinions of Mr. Bloom would be consistent with those discussed at his March 28, 2012 deposition and those that will be discussed at his continued deposition and contained in the documents exchanged by the parties and non-parties.

## D. JOHN GOLDING

i. The Hilsons do not currently plan to call Mr. Golding to testify at trial, but if the need arises, the subject matter of Mr. Golding's testimony would include explaining the circumstances of his representation of the Hilsons and the legal services he performed in defending against the claim presented against the Hilsons, including pre-trial settlement offers and post-trial work.

ii. The facts and opinions of Mr. Golding would be consistent with those contained in the documents produced by Plaintiffs with the "JG" bates pre-fix as well as other documents exchanged by the parties and non-parties.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy hereof has been furnished by facsimile and U.S. Mail this 2nd day of April 2012 to Megan Hall and B. Richard Young, Young, Bill, Roumbos & Boles P.A. Post Office Drawer 1070, Pensacola, Florida 32591.

ANGELA E. RODANTE
Florida Bar No.: 092509
STEPHANIE MILES
Florida Bar No. 15516
SWOPE, RODANTE P.A.
1234 5th Avenue East
Tampa, Florida 33605
P: (813) 273-0017
F: (813) 223-3678
AngelaR@swopelaw.com
StephanieM@swopelaw.com
Attorneys for Plaintiffs

**EXPERT REPORT OF GREG M. GAEBE, ESQ.**

c/o Gaebe, Mullen, Antonelli & DiMatteo
420 South Dixie Highway, Third Floor
Coral Gables, FL 33146
Telephone: (305) 667-0223
Facsimile: (305) 284-9844
E-mail: ggaebe@gaebemullen.com

Patricia Hilson and Nicole Hilson vs. GEICO General Insurance Company

## I. DOCUMENTS REVIEWED

1. Verdict Form and Judgments from underlying case.

2. Confidentiality Agreement

3. Select pleadings (complaint, answer and affirmative defenses, Interrogatories and answers thereto, Parties Responses to Requests for Production, and initial disclosures).

4. Depositions and exhibits thereto of:

   a. Patricia Hilson
   b. Nicole Hilson
   c. Lillian Reyes
   d. Robert Joyce
   e. Kevin Holjes
   f. Patricia Thomas
   g. Karen Hall

5. Pertinent Portions of documents produced in the course of discovery which consists of the GEICO Claims File, GEICO Manuals and Training Materials, GEICO Policy of Insurance and ALOG Notes.

6. Case law:

   a. *Infinity Inc. Co. v. Berges*, 806 So.3d 504 (Fla. 2d DCA 2001)
   b. *Berges v. Infinity Ins. Co.*, 896 So.2d 665 (Fla. 2005)
   c. *Boston Old Colony v. Gutierrez*, 386 So.2d 783 (Fla. 1980)
   d. Florida Standard Jury Instruction 404.4

7. Claim Chronology

Exhibit 1

Expert Report of Greg M. Gaebe, Esq.
Hilson v. GEICO
April 2, 2012
Page 2 of 4

II.    OPINIONS & BASIS[1]

Based upon my review of the documents referenced above, it is my opinion that
GEICO, under the circumstances of this case, did not act in good faith, fairly, or
honestly or with due regard towards the interest of its insureds for the following
reasons:

1. GEICO failed to settle the underlying claim by payment of an amount up to its
   policy limits when it could have and should have done so, had it acted fairly and
   honestly, and with due regard for their insureds interests.

   Basis:  GEICO received a pre-suit settlement demand package that offered to
   settle the underlying claims for the insureds policy limits.  GEICO understood the
   terms of the offer and chose to reject it and make a counteroffer.  Based on the
   information contained in the demand package, the value of the claim was well in
   excess of the minimal policy limits.  The medical records contained in the demand
   package showed that underlying claimant had received an 8% permanent
   impairment rating.  The underlying claimant's symptomology caused a physician
   to order a second and third MRI in February 2005.

2. GEICO failed to exercise diligence and a level of care commensurate with the
   undertaking, in the handling of the subject claim.

   Basis: GEICO failed to exercise diligence and a level of care commensurate with
   the undertaking in the timing of its response to the demand package and the fact
   that the adjustor consulted with no one prior to making a counteroffer.  GEICO
   had numerous tools available to it after it received the demand package.  It failed
   to employ those tools.  GEICO failed to request a pre-litigation mediation or even
   a meeting with the underlying claimant.

3. GEICO failed to adjust, investigate, conduct discovery and defend the claim
   against the Plaintiffs herein.

   Basis: The defense attorney did nothing to revive settlement negotiations when he
   was assigned to defend the insureds.  At no time through the beginning of January
   2008, did the attorney assigned to defend the insureds make any new settlement
   overtures.  The defense work in obtaining medical records after receiving the
   assignment to defend the insureds fell below standard processes under the
   circumstances of this case.

---

[1] I reserve the right to supplement, amend, or modify the opinions expressed herein upon the receipt and my review
of any additional information, discovery and/or depositions.

Expert Report of Greg M. Gaebe, Esq.
Hilson v. GEICO
April 2, 2012
Page 3 of 4

4. GEICO had an opportunity to settle this claim, under the facts of this case and existing Florida law at the time, well in advance of the underlying complaint being filed against their insureds, and in fact up until December 2007 (as per Ms. Johnson's deposition testimony).

   Basis: The demand package invited GEICO to request additional information. However, GEICO made no such request. When the lawsuit was filed, the underlying claimant's attorney did not object to any of the defense subpoenas directed to the underlying claimant's medical providers.

5. GEICO made a late and untimely offer of its minimal policy limits.

   Basis: GEICO did not offer policy limits until January 2008, which was 19 months after the lawsuit was filed.

6. GEICO failed to fully and promptly advise Plaintiffs of any settlement opportunities, the likelihood of a recovery in excess of the policy limits, and the steps they might take to avoid same, and any procedures which were available to lessen the financial impact of the underlying claim upon them.

   Basis: GEICO did not advise the insureds of its decision to reject the offer contained in the demand package until after GEICO had already rejected the offer. GEICO misled the insureds by stating that "negotiations continue." GEICO did not ask the insureds whether they wanted to contribute any money to effectuate a settlement of the underlying claim. GEICO did not permit the insureds to enter into a consent judgment which may have lessened the financial impact of the underlying claim. GEICO also pursued an appeal that increased the financial impact upon the insureds.

7. GEICO violated its own claim handling policies after they received the time limit demand letter from Ms. Reyes and/or Mr. Joyce's law firm.

   Basis: GEICO policies and procedures require the involvement of upper management when a time-limited settlement offer is made for policy limits.

III. **QUALIFICATIONS**

1. See attached C.V.

Expert Report of Greg M. Gaebe, Esq.
Hilson v. GEICO
April 2, 2012
Page 4 of 4

---

## IV.  EXPERT COMPENSATION

1.  Compensated at a rate of $350.00 per hour.

## V.  PRIOR EXPERT TESTIMONY

I have provided expert testimony in the last five years pertaining to bad faith matters in the following case:

   a.  *Adega v. State Farm Mutual Automobile Insurance Company*,  Southern District of Florida, Case No.: 1:07-cv-20696-WMH, testified for the Defendant.

GREG M. GAEBE, ESQ.                                        April 2, 2012



| Home | | Areas of Practice | Client List | Offices | Links | Contact Us |
|------|--|-------------------|-------------|---------|-------|------------|

## EXPERIENCED PROFESSIONALS

Greg Gabe H.
Michael A. Mullen
Peter R. Antonelli
Anthony DiMatteo
Christienne Sherouse
Christopher S. Moore
Megan A. Shea
Deveng Desai
Alexano A. Santiago
Thomas S. Roberts, III
Matthew C. Barton
Kenneth M. Wingley
Brian W. Kelley
Elaine D. Walker
Carlos B. Salup
John S. Gabe, Of Counsel

# Greg Gaebe

Greg Gaebe, the founding partner of the firm, is known for successfully defending clients in numerous trials. Mr. Gaebe has tried more than 150 jury trials, and in one year alone, tried 15 cases to verdict. A defense lawyer's lawyer, Mr. Gaebe handles products liability, bad faith insurance claims, legal malpractice, and catastrophic personal injuries cases. He has been involved at both the trial and appellate levels in numerous cases of public importance that effected significant changes in the law.



Additionally, Mr. Gaebe has been involved in the defense of major tobacco cases, the defense of Sabreliner in the ValuJet crash lawsuits and the defense of Southland Company in a national class action for alleged ADA violations. Mr. Gaebe is often called on as a bad faith expert, and has defended many individuals, corporate entities and insurance companies in catastrophic exposure cases. He also handles insurance coverage matters and defends municipalities in high exposure claims involving civil rights allegations.

Mr. Gaebe is admitted to practice in all Florida state and federal courts including the United State Supreme Court. He is a member of the Federation of Defense and Corporate Counsel (FDCC) and is also a member of the prestigious International Academy of Trial Lawyers. He is also a member of the American Bar Association, the Coral Gables Bar Association, The Florida Bar, the Dade County Defense Bar Association and the Florida Defense Lawyers Association. Mr. Gaebe is AV rated by Martindale-Hubbell Law Directory and was selected for inclusion in the 2011 edition of Super Lawyers, The Annual List of the Top Attorneys in Florida.

## Education

Florida State University (J.D. 1971)
College of William & Mary (B.A., 1968)

3/12/12                          South Florida Law Firm-Gaebo, Mullen, Antonelli and DiMatteo-

**Contact Information**
420 South Dixie Highway, Third Floor
Coral Gables, Florida 33146
Telephone: (305) 667-0223
Facsimile : (305) 284-9844
E-Mail: ggaebo@gaebsmullen.com



Greg M. Gaebe

s. il campbamyers.com

Greg Gaebe | Michael A. Mullen | Mark R. Antonelli | Anthony DiMatteo
Christianne Sherouse | Christopher S. Moore | Miriam R. Merla | Devang Desai
Maxime A. Santigo | James S. Robertson, III | Matthew C. Martin
Joseph M. Winsby | Brian W. Kelley | Elaine D. Walter | Carlos B. Salun
John S. Gaebe, Of Counsel

☐ Contact Us                              Gaebe, Mullen, Antonelli & Dimatteo © 2011 | Disclaimer

Miami (305) 667-0223 / West Palm Beach (561) 832-6788

"The hiring of a lawyer is an important decision that should not be based solely upon advertisements.
Before you decide, ask us to send you free written information about our qualifications and experience."

1

Re:     Patricia Hilson
        and Nicole Hilson
        Plaintiffs
        v.
        GEICO General Insurance Company

        Case No. 8:11-cv-00013-JDW-MAP


April 2, 2012

- Following is an outline of my educational and training background. For additional
  information, please refer to my Curriculum Vitae attached.


B.A., University of Miami, Communications

**Law Enforcement**

Minor, Criminal Justice, S.E. Florida Institute of Criminal Justice, Miami Dade College

Advanced Criminal Investigation, S.E. Florida Institute of Criminal Justice, Miami Dade College

Organized Crime Investigation, S.E. Florida Institute of Criminal Justice, Miami Dade College

Narcotics Investigation, U.S. Drug Enforcement Administration

Organized Crime Investigation, U.S. Customs, U.S. Bureau of Alcohol, Tobacco, and Firearms

Criminal Investigation - Gathering Evidence for Prosecution, Miami Dade State Attorney's Office

Criminal Investigation, Organized Crime Investigation - Florida Department of Law Enforcement

Continuing Education, S.E. Florida Institute of Criminal Justice, Miami Dade College

**Traffic Accident Investigation**

National Accident Sampling System, NHTSA, U.S. Department of Transportation

Exhibit 2

04/02/2012  17:34  SHOPE RODONTE PA → 818504321444  NO.684  P15
Case 8:11-cv-00013-MSS-MAP  Document 56-1  Filed 05/11/12  Page 14 of 39 PageID 1957

2

Selected to participate in this research initiative.  Advanced training: accident scene investigation, vehicle inspection and damage analysis, and accident dynamics.
NHTSA, U.S. Department of Transportation, Oklahoma City, OK.

National Accident Sampling System, NHTSA, U.S. Department of Transportation
Advanced training, gathering evidence at pedestrian accident scenes for direct response; In coordination with Hollywood Police Department, Ft. Lauderdale Police Department
NHTSA, U.S. Department of Transportation, Oklahoma City, OK.

## Insurance Specialization

Legal Principles Claim Specialist
American Educational Institute
Ft Lauderdale, Florida 1999

GMAC Insurance - Claims Adjusting.  Claims handling techniques, principles of insurance, ethics and bad faith, basic claims investigation.
Winston-Salem, N.C.

GMAC Insurance - Auto Damage Appraisal
Winston-Salem, N.C.

GMAC Insurance - Insurance investigation - ethics and bad faith.  Presented by defense attorneys.
West Palm Beach, Florida

Claims Management Seminars presented annually by Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer.  Curriculum included case law updates, ethics and bad faith, statute updates, effective claims investigation.
Ft. Lauderdale, Florida, 1998 - 2008

The Psychology of Claims, Association of Property and Casualty Claims Professionals – Tampa, Florida

Effective Claim Handling presented by Haas, Dutton, Blackburn, Lewis & Longley
Curriculum included effective claim investigations, ethics and bad faith, specialized handling of medical and PIP claims, statute updates.
Tampa, Florida 2003-2008.

3

The Effect of HIPPA on SIU investigations, in coordination with IASIU, (International Association of SIU's) Ft. Lauderdale, Florida

IASIU - Quarterly training presented by various experts, law enforcement, NICB, and defense counsel in all matters related to Special Investigations Unit (SIU) investigations including, liaison with law enforcement and National Insurance Crime Bureau (NICB), ethics and bad faith, case law and statute updates.
Ft. Lauderdale, Florida, 1998-2008

FIFEC (Florida Insurance Fraud Education Committee) Annual Seminar (formerly known as DIF/SIU Conference)
Three days of intensive instruction in all matters related to SIU, including advanced investigative techniques, ethics and bad faith, case law and statute updates presented by industry specialists, NICB, independent experts, law enforcement, Florida Department of Financial Services and defense firms. Orlando, Florida, 1998-2007

Advanced Insurance Fraud Investigation, Medical Claims, Nationwide Insurance, Annapolis, Md.

Certified Trainer, Nationwide Insurance - Certified Trainer for claims personnel specializing in the areas of fraud recognition and investigation, personal injury claims fraud, recognition of suspect medical documents and medical billings, and effective interviewing techniques.

National SIU Training Team, Nationwide Insurance - Development of advanced investigative techniques for SIU investigators throughout the Nationwide organization.

Nationwide Insurance - developed and instructed a training curriculum for PIP (injury) adjusters. Identifying medical fraud, recognition of fraudulent medical billings and records.

GMAC Insurance - Developed curriculum for claims adjusters, investigation of minimal impact, soft tissue injury accidents. Identification of fraud indicators.

Mercury Insurance - developed and instructed a training curriculum for PIP (injury) adjusters and SIU Investigators. Identifying medical fraud, recognition of fraudulent medical billings and records.

Mercury Insurance - Instructor advanced interviewing techniques for claims adjusters, insurance fraud recognition.

4

- I have testified as an expert during the previous 4 years, in regard to the following cases:

  Cecelia Dellavecchia, Plaintiff
  v.
  GEICO General Insurance Company
  US District Court Middle District of Fl Tampa Division
  Case No. 8:09-CV-2175-T-27TGW

  Lynda Lewis, Plaintiff
  v.
  GEICO General Insurance Company
  Case No. 53-03-CA-5437-0000-WH
  Circuit Court Civil Div Polk County Fl

- I was retained in the following case(s), however the case settled prior to my scheduled testimony:

  Brown Weissman
  v.
  Fireman's Fund Insurance Company/AIC
  Case No. 10 Civ.3390
  US District Court Southern District of NY

- I have been retained in the following case(s), however my testimony is pending as of this date:

  Marivic Grant & Luke Frazier
  v.
  Hanover & Arline
  Case No. 11-10379
  Circuit Court Civil Div Hillsborough County Fl

- With regard to my expert qualifications, I have not professionally published any publications or articles, but materials I have written are available on my website at http://www.solutionsforyourinsuranceclaim.com/

  In addition, I serve as a voluntary claims expert for http://allexperts.com, a service of About.com, a part of The New York Times Company.

5

- Following is a statement of the compensation to be paid to me for the study and testimony in this case:

    $1,500 retainer received February 9, 2012 and credited to the account

    $125 per hour for document review
    $100 per hour portal to portal travel time
    $175 per hour for testimony

6

Written Report – Statement of Opinions – Jane Pytel

Re:     Patricia Hilson
        and Nicole Hilson
        Plaintiffs
        v.
        GEICO General Insurance Company

        Case No. 8:11-cv-00013-JDW-MAP

April 2, 2012

The below constitutes my expert opinions in this matter based on the information provided in discovery up to this point. In the event that additional documents are obtained in discovery, and as any additional information might affect my opinions, I reserve the right to supplement this report.

- Following is a statement of my opinions based upon the following input data received.

        CD containing "Hot Docs" including pre-suit correspondence and claims file materials
        CD containing GLC and GHOC documents
        CD's containing the following depositions:
                Inez Johnson including exhibits
                Patricia Hilson and exhibits
                Robert Joyce and exhibits
                Kevin Holjes including exhibits
                Karen Hall and exhibits
                Patricia Thomas and exhibits
        Paper copies of the following depositions:
                Lillian Reyes and exhibits
                Nicole Hilson
        Digital copy of the following depositions:
                Dean Chalk
        GEICO's ALOG
        Plaintiff's Notice of Serving Amended Unverified Answer to Number 3 of GEICO's
                First Interrogatories to Plaintiffs
        CD containing GTM and GCM documents
        CD containing pertinent pleadings and discovery
        Plaintiff's Motion for Leave to File Amended Complaint with incorporated Memorandum

## OPINION 1:

## GEICO'S CLAIM INVESTIGATION AND EVALUATION FELL BELOW INDUSTRY STANDARDS AND PRACTICES.

### BASIS:

a. Neither the Hilson vehicle nor claimant Johnson's vehicle was inspected or photographed.

b. GEICO failed to obtain any type of statement from Nicole Hilson, claimant Johnson or other pertinent witnesses.

c. Adjustor Sarah Harold was not proactive in her investigation. She was only going through the motions in her attempts to obtain information from claimant Johnson's attorneys, including her attempts to obtain medical records.

d. Adjustor Sarah Harold failed to initiate settlement negotiations after determining that the possibility existed for the claim to exceed the Hilsons' policy limits.

e. Adjustor Patricia Thomas sought no managerial input in responding to the pre-suit settlement demand package and she, in fact, ignored certain managerial direction.

f. Adjustor Patricia Thomas made no attempt to gather any additional information upon receipt of the demand package, even though the demand package contained important clues that should have alerted her to the possibility that the she might want to request additional information.

g. Upon receipt of the demand package, adjustor Patricia Thomas should have employed investigative tools that are commonly used to assist in evaluating claims.

h. Adjustor Patricia Thomas' counteroffer was incomplete, inconsistent with documented evidence of her internal evaluation, and substantially below what appears to have been the posted reserve.

i. Adjustor Patricia Thomas intentionally chose not to settle the claim when she had an opportunity to do so.

j. Adjustor Patricia Thomas' communication to the Hilsons regarding the demand package was untimely, incomplete, and misleading.

k. Adjustor Patricia Thomas' ALOG notes in the months following receipt of the demand were misleading.

l. Adjustor Patricia Thomas did not have the necessary training or experience to properly evaluate the demand package.

m. GEICO failed to follow its own standards for proper investigation and evaluation of claims. Some of which include:
   1) GCM 76a, 80, 92, 161, 211, 212

04/02/2012  17:34   SHORE RODANTE 50 → 8185043214144        NO.694   P31

8

    2) GTM 21, 26, 28, 29, 332, 333, 338, 345, 350, 351, 352, 353, 385, 386, 394, 422, 583, 603, 887,1058, 1059, 1060

n. GEICO failed to follow Florida requirements for proper investigation and evaluation of claims. Some of which include:

    1) Florida Administrative Code § 690-220.201

    2) Florida Statutes § 624.155(1)(b)1

    3) Florida Statutes § 626.877

    4) Florida Statutes § 626.856

    5) Florida Statutes § 626.9541(1)(i) unfair claims settlement practices 3.a.

## OPINION 2:

## GEICO DID NOT KEEP ITS INSUREDS ADEQUATELY INFORMED OF THE STATUS OF THE CLAIM.

### BASIS:

a. After sending an excess letter on 06/01/04, adjustor Sarah Harold did not re-contact the Hilsons in writing for 9 months, at which time she merely sent a courtesy copy of one letter directed to the assistant of claimant Johnson's attorneys.

b. As a result of Patricia Hilson's telephone call to GEICO, requesting a status update, adjustor Sarah Harold called the insured one time on 07/13/05, more than 13 months after she had sent the Hilsons an excess letter.

c. Adjustor Patricia Thomas did not communicate with the Hilsons at pivotal times during the pendency of the claim, and what communications she did have with them were sparse, untimely, incomplete, and misleading.

Signed: _____ Date 4/2/12

Notary Public: _____

9

(Attachment: CV)

**Jane Pytel**
**6 Sanders Court West**
**Homosassa, Florida 34446**
**(352) 503-3150**


**Curriculum Vitae**


- Bachelor's Degree in Communications, University of Miami.


- **1972 – 1982**
  **Police Officer/Police Detective**

  **Miami-Dade Police**

  <u>Road Patrol Officer</u>, handling all types of calls in the "rougher" parts of Miami Dade County. Appointed as a Field Training Officer for rookie officers.

  <u>General Investigations Detective</u> Specialized investigations in burglary, theft, fraud, and sex offenses.

  <u>Vice Intelligence Unit</u> Undercover work, primarily narcotics. Responsibilities also included organized gambling, wire taps, securing search warrants.

  <u>Organized Crime Bureau Detective</u>

  Complex, multi-level narcotics investigations, tactical investigations relating to organized crime. These investigations were multifaceted, overlapping various specialties of criminal investigation including so-called white-collar crime, racketeering, conspiracy, fraud, money laundering, and embezzlement. The evidence gathered was later turned over to state and federal prosecutors.

  Attended various investigative schools through the Miami Dade Police, receiving over 350 hours of intense investigative training.

  Completed federal training programs from U.S. Drug Enforcement Agency for an additional 80 hours of investigative training.

  <u>Task Force Liaison</u> Cooperative complex investigations with local, state, and federal agencies in matters involving organized crime, organized narcotics, illegal gun trading,

alcohol sales. Agencies involved included Broward County Sheriff; Florida Alcohol, Tobacco, Firearms; Florida Department of Law Enforcement; U.S. Drug Enforcement Agency; U.S. Customs; Federal Bureau of Investigation.

- **1982 - 1997**
  **Traffic Accident Investigations** Lewis J. Pytel Consulting Services, an Accident Reconstruction Firm

  Investigative activities - gathering and analysis of physical evidence relating to traffic accidents. In addition, the firm specializes in identifying physical evidence relating to insurance fraud in traffic accidents.

  Participation in various professional seminars offered by engineering and medical associations.

- **1994, Broward County, Florida**
  **National Accident Sampling System, NHTSA, U.S. Department of Transportation**
  Selected to participate in this research initiative. The training involved completion of a three week course of study involving accident scene investigation, vehicle inspection and damage analysis, and accident dynamics offered in cooperation with NHTSA, U.S. Department of Transportation in Oklahoma City, OK.

  Using specifically selected injury traffic accidents as its source, the study required participants to analyze vehicle damages and vehicle dynamics. Ultimately, the data was used to optimize vehicle crashworthiness.

  <u>Pedestrian Injury Study</u>. Selected for advanced training and participation in this program. This advanced NHTSA course of study encompassed an additional two weeks of training. Participants responded to on-scene pedestrian accidents for an investigative analysis of the scene. The analyses encompassed documentation of pedestrian point of contact, pedestrian after-crash projectory, and documentation and analysis of the physical evidence presented on the vehicle. Ultimately the data was utilized to improve car design and engineering in the interest of minimizing pedestrian injury.

- **1997- 2003**
  **GMAC Insurance Company**

  <u>Field Adjuster</u>, Integon Insurance Company, which was later purchased by GMAC and became known as GMAC Insurance.

GMAC required all adjusters to successfully complete six weeks of intensive training including, claims investigations, contract provisions, claims law, interviewing techniques, and ethics.

Field adjusters were additionally required to successfully complete an additional week of vehicle appraisal training, followed by four additional weeks of field appraisal 'ride-alongs' in the field. Successfully completed the basic appraisal series, and later was selected for advanced training for the appraisal of motorcycles, heavy trucks, and mobile homes.

The field adjuster position encompassed all facets of collision, property damage, comprehensive, and auto theft losses. Claims handling responsibilities included damage appraisal of all vehicles involved in each loss, recorded interviews of all parties, scene analysis, securing and verifying police reports, contact with police agencies, and claims payments.

**620** All Lines Adjuster's license, current since 1997

### 1998 - Special Investigations Unit, Field Investigator

Responsibilities encompassed all coverages including comprehensive, auto theft, BI/UM and PIP. Specialization in personal injury investigations which encompassed numerous ongoing and complex investigations of various medical providers and suspected ring activities in South Florida. SIU referrals were submitted by individual adjusters, and necessitated close coordination and cooperation with claims staff.

The SIU field investigator was responsible for conducting advanced claims investigations, or multiple related claims investigations for the claims department adjusters. Specific duties included scene visits; medical clinic inspections; securing in-person recorded interviews with parties and witnesses; scene investigations; contact with investigating police officers and police departments; claim related background investigations; coordination with defense attorneys; assistance, attendance at, and investigative input data for attorney-assigned Examinations Under Oath; ongoing coordination with the claims department; liaison with local, state, federal law enforcement agencies, National Insurance Fraud Bureau (NICB); mandatory referrals.

Selected to provide mandated training for the claims staff, specializing in the area of personal injury claims; vehicle damage and vehicle dynamics analysis; and effective interviewing techniques.

04/08/2012 17:34 SHORE PONENTE P9 818504321444 NO.654 P26

12

GMAC required SIU Investigators to complete extensive ongoing instruction, both in-house and external. Defense attorneys routinely provided training related to legal issues, case-law, and ethics. SIU management likewise organized regular training provided by various experts in the field of investigation, medical, auto theft trends, ethics and bad faith, and advanced interviewing skills represent some of the subjects included.

American Educational Institute, Legal Principles Claim Specialist, 1999

- **2003 – 2005**
  **Nationwide Insurance**

  <u>**SIU Field Investigator, Major Case Unit**</u>

  The Nationwide select SIU Major Case Unit, Casualty Fraud Team was formed in 2002 to investigate organized medical fraud and staged accident rings. The concept was new to Nationwide and offered the opportunity to move towards complex civil theft case preparations similar in nature to my law enforcement evidence gathering processes of the past. Claims assignments were referred by individual adjusters, as well as by identification of suspicious claims by SIU staff.

  Specific duties included exhaustive reviews of medical records submitted to Nationwide; medical clinic inspections; in-person recorded interviews of witnesses or parties; scene investigations; contact with investigating officers and police departments; claim-related background investigations; liaison with law enforcement agencies and NICB. Worked closely with Nationwide staff counsel.

  Nationwide SIU Investigators administer EUO's. In depth preparation pre- testimony was an absolute requirement necessitating weeks of investigative activities. Thorough post EUO investigation was likewise a vital component of the process.

  <u>**Certified Trainer**</u> Selected as a Certified Trainer for claims personnel specializing in the areas of fraud recognition and investigation, personal injury claims fraud, recognition of suspect medical documents and medical billings, and effective interviewing techniques.

  Certified Trainers successfully completed an in depth certification program provided by Nationwide's home office. Training offered in Annapolis, Md.

13

**National SIU Training Team** Selected by senior management to serve on a national training team to teach advanced investigative techniques to other SIU investigators throughout the Nationwide organization.

Selected as **Nationwide Investigator of the Month**, 2004 for work related to organized criminal elements targeting Nationwide agents in Miami. Worked closely with the agents and the underwriting department.

Selected to serve on the **Nationwide Catastrophe Team (CAT)**, 2004 Florida. CAT members established and maintained mobile claims units in the aftermath of the hurricanes. Selected as team leader of the customer service operations in Punta Gorda, Vero Beach, Pensacola

Selected to serve as the **SIU member of the UM Task Team**, for the effective investigation of UMBI claims. Worked with claims and RN specialists.

- **2005 – 2008**
  **Mercury Insurance**

  **SIU Field Investigator**

  Specializing in personal injury investigation, medical provider fraud and organized fraud rings, staged accidents. Claims assignments were referred by individual adjusters.

  Responsibilities included investigation of suspect medical provider fraud and organized rings, staged accidents, along with non-casualty losses. Specific duties included detailed analysis of medical records submitted to Mercury; medical clinic inspections; in-person recorded interviews of witnesses or parties; scene investigations; contact with investigating officers and police departments; liaison with law enforcement agencies and NICB.

  Worked closely with Mercury's defense attorneys in order to maximize the defense process related to SIU files.

  Mercury SIU Investigators administer EUO's. Exhaustive pre and post EUO investigative tasks were integral ingredients to the overall investigation.

  Specialized in training claims staff in areas including fraud recognition, personal injury claims fraud, recognition of suspect medical documents and medical billings, and effective interviewing techniques. Devised an example suspect PIP fraud claims file for 'hands on' instruction of PIP adjusters. Instructed claims personnel regarding the Florida

laws that pertain to insurance fraud, referral of suspicious claims, immunity, and mandatory reporting.

Assisted the SIU Manager in preparation of the Mercury Fraud Plan as mandated by DFS.

● **Education, Training, Seminars**

B.A., University of Miami, Communications

## Law Enforcement

Minor, Criminal Justice, S.E. Florida Institute of Criminal Justice, Miami Dade College

Advanced Criminal Investigation, S.E. Florida Institute of Criminal Justice, Miami Dade College

Organized Crime Investigation, S.E. Florida Institute of Criminal Justice, Miami Dade College

Narcotics Investigation, U.S. Drug Enforcement Administration

Organized Crime Investigation, U.S. Customs, U.S. Bureau of Alcohol, Tobacco, and Firearms

Criminal Investigation - Gathering Evidence for Prosecution, Miami Dade State Attorney's Office

Criminal Investigation, Organized Crime Investigation - Florida Department of Law Enforcement

Continuing Education, S.E. Florida Institute of Criminal Justice, Miami Dade College

## Traffic Accident Investigation

National Accident Sampling System, NHTSA, U.S. Department of Transportation

Selected to participate in this research initiative. Advanced training: accident scene investigation, vehicle inspection and damage analysis, and accident dynamics.

NHTSA, U.S. Department of Transportation, Oklahoma City, OK.

15

National Accident Sampling System, NHTSA, U.S. Department of Transportation

Advanced training, gathering evidence at pedestrian accident scenes for direct response; in coordination with Hollywood Police Department, Ft. Lauderdale Police Department

NHTSA, U.S. Department of Transportation, Oklahoma City, OK.

## Insurance Specialization

Legal Principles Claim Specialist
American Educational Institute
Ft Lauderdale, Florida 1999

GMAC Insurance - Claims Adjusting. Claims handling techniques, principles of insurance, ethics and bad faith, basic claims investigation.
Winston-Salem, N.C.

GMAC Insurance - Auto Damage Appraisal
Winston-Salem, N.C.

GMAC Insurance - Insurance investigation - ethics and bad faith. Presented by defense attorneys.
West Palm Beach, Florida

Claims Management Seminars presented annually by Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer. Curriculum included case law updates, ethics and bad faith, statute updates, effective claims investigation.
Ft. Lauderdale, Florida, 1998 - 2008

The Psychology of Claims, Association of Property and Casualty Claims Professionals – Tampa, Florida

Effective Claim Handling presented by Haas, Dutton, Blackburn, Lewis &Longley Curriculum included effective claim investigations, ethics and bad faith, specialized handling of medical and PIP claims, statute updates.
Tampa, Florida 2003-2008.

The Effect of HIPPA on SIU investigations, in coordination with IASIU, (International Association of SIU's) Ft. Lauderdale, Florida

IASIU - Quarterly training presented by various experts, law enforcement, NICB, and defense counsel in all matters related to Special Investigations Unit (SIU )investigations including, liaison with law enforcement and National Insurance Crime Bureau (NICB), ethics and bad faith, case law and statute updates.
Ft. Lauderdale, Florida, 1998-2008

FIFEC (Florida Insurance Fraud Education Committee) Annual Seminar (formerly known as DIF/SIU Conference)

Three days of intensive instruction in all matters related to SIU, including advanced investigative techniques, ethics and bad faith, case law and statute updates presented by industry specialists, NICB, independent experts, law enforcement, Florida Department of Financial Services and defense firms.
Orlando, Florida, 1998-2007

Advanced Insurance Fraud Investigation, Medical Claims, Nationwide Insurance, Annapolis, Md.

Certified Trainer, Nationwide Insurance - Certified Trainer for claims personnel specializing in the areas of fraud recognition and investigation, personal injury claims fraud, recognition of suspect medical documents and medical billings, and effective interviewing techniques.

National SIU Training Team, Nationwide Insurance - Development of advanced investigative techniques for SIU investigators throughout the Nationwide organization.

Nationwide Insurance - developed and instructed a training curriculum for PIP (injury) adjusters. Identifying medical fraud, recognition of fraudulent medical billings and records.

GMAC Insurance - Developed curriculum for claims adjusters, investigation of minimal impact, soft tissue injury accidents. Identification of fraud indicators.

Mercury Insurance - developed and instructed a training curriculum for PIP (injury) adjusters and SIU investigators. Identifying medical fraud, recognition of fraudulent medical billings and records.

Mercury Insurance - Instructor advanced interviewing techniques for claims adjusters, insurance fraud recognition.

*Leni Ellen Kramer, M.D., F.A.C.R.*
*3301 Bayshore Blvd. #707*
*Tampa, Florida 33629*

Tele: (813) 385-303                    lenikramer1@gmail.com                    Cell: (813) 545-3269

Stephanie Miles
1234 Fifth Avenue E. Tampa, Florida 33605
Re: Hilson v. Geico Case No.: 8:11-cv-00013-MSS-MAP

Re:    Hilson v. GEICO, Case No.:8:11-cv-00013-MSS-MAP
       Written statement of emotional side of autoimmune illness

I first began treating Patricia Hilson in 2005. She was diagnosed with systemic lupus at the age of twenty five. She presented with rash, joint pain and alopecia, but evolved into a severe illness with anti-phospholipid syndrome.  She has vascular thrombotic events in the coronary arteries, left jugular and left subclavian vein.  In 1996, she underwent emergency splenectomy for hemolytic anemia, followed by laparoscopic cholecystectomy complicated by sepsis, pancreatitis, and pancreatic pseudocyst.

Since I have known her, she has had multiple hospital admission for pneumonia, lupus flares, bleeding and pancreatitis. There is skin breakdown, and pulmonary involvement.  She has depression and pain episodes, as well as intractable pain.  A lifeport is required for venous access and this has had thrombi as well. Oral anticoagulation is required and this is difficult to regulate. She has required costly treatments including intravenous gammaglobulin ($9000 per dose) and IV Benlysta.

The role of stress in a patient with this kind of life threatening disease cannot be overstated. Here is a young intelligent woman, trying to maintain a reasonable lifestyle, facing challenges from her illness on a daily basis.

Her situation is even more difficult because of the nature of the disease. While psychologic and physiologic stress have never been investigated as risk factors for the development of SLE (1), the role of chronic stress and catastrophic and major life events as triggers of flares and change in disease activity status have been explored (2). It is well established that patients with poor social support, low socioeconomic status and reduced self confidence have increased SLE disease severity (3).  The stress associated with any litigation such as that which Ms. Hilson is facing is more likely than not detrimental to her and lead to increased flares and smoldering disease activity.

The problem is magnified because flares of lupus cause neurologic and psychiatric symptoms, such as cognitive impairment (4) and disturbance in mood, affect and behavior are often seen (5). In the other words the flares of lupus precipitated by stress can lead to mental disturbances that thwart coping strategies for the patient, making it more difficult to manage stressful situations.

Exhibit 3

For Ms. Hilson, the stress of legal action, and the disruption of a lifestyle she has fought hard to maintain, lead to unremitting lupus disease activity, which lead to increased stress levels associated with poor coping strategies, and further disease activity. It is my opinion that removable of the primary stress factor will have a positive effect on her disease activity.

## REFERENCES

1. Hochberg M et al. Epidemiology and classification of systemic lupus erythematosus. Rheumatology 2011:1226

2. Peralta-Ramirez,MI et al. The effects of daily stress and stressful life events on the clinical symptomatology of patient with lupus erythematosus. Psychosom Med 2004:66:788-794

3. Karlson EW, et al. The relationship of socioeconomic status, and modifiable risk factors to outcomes in patients with systemic lupus erythematosus Arthritis Rheum 1997;40:47-56

4.

5.

Dr. Leni Kramer
April 2, 2012

Leni Ellen Kramer, MD
Curriculum Vitae
Page 1 of 7

# CURRICULUM VITAE

**Leni Ellen Kramer, M.D., F.A.C.R**
3301 Bayshore Blvd. # 707
Tampa, FL 33629
813-385-3030 (Home)
813-545-3269 (Cell)

**Date of Birth:**          September 30, 1957
**Place of Birth:**         Brooklyn, New York

**Education:**

1978 – 1980          Doctor of Medicine
                     Mount Sinai School of Medicine
                     New York, New York

1974 – 1978          Bachelor of Science Biomedical Science
                     Summa cum laude
                     The City College
                     New York, New York

**Postgraduate Training:**

1984 – 1986          Rheumatology Fellowship
                     Albert Einstein College of Medicine
                     Bronx, New York

1983 – 1984          Infectious Disease Fellowship
                     Albert Einstein College of Medicine
                     Bronx, New York

1981 – 1983          Internal Medicine Residency
                     Jacobi Hospital
                     Bronx, New York

1980 – 1981          Internal Medicine Internship
                     Mount Sinai Hospital
                     New York, New York

Exhibit 4

Leni Ellen Kramer, MD
Curriculum Vitae
Page 2 of 7

**Professional Experience:**

| | |
|---|---|
| 2004 – Present | Rheumatologist<br>Osteoporosis and Rheumatology Center of Tampa Bay<br>Tampa, Florida 33609 |
| 2004 – Present | Sub Investigator, Clinical Coordinator<br>Southwest Florida Clinical Research Center<br>Tampa, Florida 33609 |
| 2002 – 2004 | Rheumatologist<br>Family Arthritis Center<br>Jupiter, Florida 33458 |
| 1997 – 2002 | Rheumatologist<br>Arthritis and Rheumatology Associates of Palm Beach<br>West Palm Beach, Florida 33401 |
| 1986 – 1997 | Rheumatologist<br>Queens-Long Island Medical Group<br>Forest Hills, New York 11375 |
| 1986 – 1997 | Attending Rheumatologist<br>Outpatient Department<br>Hospital for Special Surgery<br>New York, New York 10021 |
| 1986 – 1997 | Clinical Assistant Professor of Medicine<br>Cornell University Medical College<br>New York, New York 10021 |
| 1995 – 1997 | Physician Advisor for Utilization Management<br>Queens-Long Island Medical Group<br>Forest Hills, New York 11375 |
| 1992 – 1993 | Director of Quality Assessment<br>Laguardia Hospital<br>Forest Hills, New York 11375 |

Leni Ellen Kramer, MD
Curriculum Vitae
Page 3 of 7

**Licensure:**

Florida Medical License: ME0073426
New York Medical License: 147828
Diplomate of National Board of Medical Examiner: 230741
Diplomate of American Board of Internal Medicine: 090672
Diplomate of ABIM, subspecialty Rheumatology: 24721

**Professional Society Memberships:**

Fellow of the American College of Rheumatology
Member of the Florida Society of Rheumatology
Member of the American Medical Women's Association

**Bibliography:**

1. Kramer LE, Rojas-Corona RR, and Eisenberg EF, Dissemated aspergillosis and pacemaker endocarditis, Pace, Vol.8, March-April 1985
2. Epstein A, Greenberg M, Halbert S, Kramer L, and Barland P. Clinical application of an ELISA technique for the detection of antihistone antibodies. J. of Rheumatology 13:304-307, 1986
3. Fallon-Friedlander S, Guzik H, and Kramer LE. Clostridium Septicum arthritis associated with colorectal carcinom. J. of Rheumatology 13:662-663, 1986

**Lectures:**

Amgen: New Treatments for Rheumatoid Arthritis
Pharmacia: Arthritis in the Elderly
Pharmacia: Cardoirenel Effects of COX-2 Inhibitors
Novartis: Treatment of Osteoporosis
Pfizer: Treatment of Osteoporosis
Searle: Round Table discussion on the use of COX-2 Inhibitors
Aventis: Osteoporosis questions and answers
Aventis: Office Conference on Osteoporosis Treatment
Pfizer: Treatment of arthritis with Cyclooxygenase-2 Inhibitors
Merck: Treatment of Osteoporosis
Searle: Use of Cyclooxygenase inhibitors in the treatment of arthritis
Pfizer: Round Table discussion on the use of COX-2 inhibitors

Leni Ellen Kramer, MD
Curriculum Vitae
Page 4 of 7

**Research Experience:**

Osteoarthritis in the Knee Protocol NI115713
Hoffman-La Roche

Osteoarthritis Knee Pain Protocol MCHM 8B-202
Machrochem

Incidence of UGI Events Protocol N49-98-22-035
Searle

Rheumatoid Arthritis Protocol WA15541
Hoffman-La Roche

Osteoarthritis Success 1
Searle

Rheumatoid Arthritis Protocol 068
Merck

Osteoarthritis Pain Protocol OC95-0302
Purdue-Pharma

Rheumatoid Arthritis Protocol 096
Merck

Rheumatoid Arthritis Protocol 98-0-049
Fujisawa Healthcare

Rheumatoid Arthritis Protocol 98-0-0051
Fujisawa Healthcare

Rheumatoid Arthritis on Methotrexate Protocol
IL1ra990145
Amgen

Rheumatoid Arthritis-Long term safety Protocol
IL-1ra990757
Amgen

Safety Follow-up Protocol WA11541C
Hoffman-La Roche

Leni Ellen Kramer, MD
Curriculum Vitae
Page 5 of 7

Rheumatoid Arthritis on MTX/Enbrel Protocol 20000223
Amgen

OA of the Knee Protocol 635-IFL-0508-003
Pharmacia

OA of the Knee Protocol 872-IFL-0513-004
Pharmacia

Rheumatoid Arthritis Protocol 20010190
Amgen

OA of the Hip/Knee Protocol 008
Pfizer

Osteoporosis Protocol 301
Wyeth-Ayerst

Rheumatoid Arthritis Comparing Biologic vs. Non-
Treatment

ACR Improvement Criteria for Rheumatoid Arthritis

Osteoarthritis, Tolerability and Effectiveness

Rheumatoid Arthritis, Safety of Anti-TNF Monoclonal
Antibody

Revision of Criterion for the dx of Rheumatoid Arthritis

Open Label Extension in Treatment of Osteoarthritis of the
knee and/or hip

Osteoarthritis, Rotator Cuff Tear and/or Primary or
secondary Adhesive Capsulitis Protocol HUPS/L-8229
Sanofi-Synthelabo

Rheumatoid Arthritis DMARD Intervention and Utilization

Vaccine Antibody Response in Subjects with Rheumatoid
Arthritis

Leni Ellen Kramer, MD
Curriculum Vitae
Page 6 of 7

Rheumatoid Arthritis, Continuous Study Protocol DE020
Abbott

Efficacy and Safety HHER for Persistant Pain Protocol
Purdue Pharma LP

Rheumatoid Arthritis Protocol WA17824
Roche

Osteoarthritis knee pain Protocol L-9385
Sanofi-Synthelabo

Safety Study Chronic Low Back Pain and or / OA of the hip
or knee Protocol PTI-801-XH
Pain Theraputics

Rheumatoid Arthritis Protocol WA18063
Roche

Rheumatoid Arthritis Protocol U3384g
Genentech

Rheumatoid Arthritis Protocol WA18696
Roche

Rheumatoid Arthritis Protocol WA20495
Roche / Genentech

Rheumatoid Arthritis Protocol WA20494
Roche / Genentech

Rheumatoid Arthritis Protocol WA20497
Roche / Genentech

Rheumatoid Arthritis Protocol U3924g
Genentech

Osteoarthritis  Protocol A3191172
Pfizer

Osteoarthritis of the Knee or Hip Protocol A4091025
Pfizer

Leni Ellen Kramer, MD
Curriculum Vitae
Page 7 of 7

Rheumatoid Arthritis Protocol D4300C00002
Astra Zeneca

Rheumatoid Arthritis Protocol D4300C00003
Astra Zeneca

_____

Leni Ellen Kramer, MD

# S W O P E ■ R O D A N T E

## FACSIMILE COVER SHEET

**DATE:**            **April 2, 2012**

**TO:**             **Megan Hall/Richard Young**

**COMPANY:**          **Young, Bill, Roumbos & Boles, P.A**

**FAX NUMBER:**        **850-432-1444**

**FROM:**            **Amanda Conklin, Legal Assistant**

**RE:**             **Hilson v. GEICO**

☐ COPY   ☒ ORIGINAL   VIA U.S. MAIL

**NUMBER OF PAGES INCLUDING COVER SHEET:**      39

**COMMENTS:**

This information contained in this facsimile message is legally privileged and confidential information intended only for the exclusive use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the above address via the United States Postal Service.

DALE SWOPE* ▪ ANGELA RODANTE* ▪ LISHA BOWEN ▪

BRANDON CATHEY†▪  HENRY GYDEN* ▪  DARRELL HINSON†▪

MARC MATTHEWS* ▪ STEPHANIE MILES* ▪ SHEA MOXON* ▪ BRENT STEINBERG*

## SWOPE, RODANTE, P.A.
### LAW FIRM

1234 5th AVENUE E. ▪ TAMPA, FLORIDA 33605 ▪ (813) 273-0017 ▪ FAX: (813) 223-3678
191 PEACHTREE STREET, SUITE 3300 ▪ ATLANTA, GEORGIA 30303 ▪ (404) 736-3729 ▪ FAX (404) 736-3736

* Licensed to practice in Florida   † Licensed to practice in Florida and Georgia

WWW.SWOPE-RODANTE.COM